# UNITED STATES DISTRICT COURT

for the

# MIDDLE DISTRICT OF PENNSYLVANIA

YELENA KOVALCHUK )
)
versus )
) CIVIL ACTION #
Bureau of Prisons )
)
Attorney General )
)

FILED
HARRISBURG, PA

MAY 19 2023

PER _____
DEPUTY CLERK

# WRIT OF HABEAS CORPUS

Petition for Relief from a Sentence by a Person in State Custody Under 28 U.S.C. § 2254

1. I am Yelena Kovalchuk. I am currently serving a second sentence under a judgment against me in a Pennsylvania state court. I am asking for relief from the sentence.
2. The Pennsylvania case number is Commonwealth of Pennsylvania versus me, CT-21-MD-0112-2023.
3. I am confined in Cumberland County Prison, 1101 Claremont Road, Carlisle, PA 17015, Phone: 717.245.8787.
4. This confinement is for six months, and I was sentenced May 16, 2023.
5. I cannot purge out of confinement because the order of commitment requires children who are out of my control to spend seven consecutive nights with the opposing parent.
6. I therefore do not hold the jailhouse keys in my hands, and given the vague terms of release renders this incarceration as cruel and unusual punishment.
7. This petition complies with the one-year statute of limitations found in 28 U.S.C. § 2244(d) as it is filed within one year of the incarceration.

1

8. I was sentenced for violating an order of the Court of Common Pleas, Cumberland County.
9. This Order violated my civil rights and caused my wrongful incarceration.
10. I ask to be freed.
11. The court entered its Order after a bench trial.
12. I was self-represented.
13. I testified in the narrative at my trial and I cross-examined witnesses.
14. I testified at a pre-trial hearing.

## EXHAUSTING REMEDIES

15. Pennsylvania's system of court administration prohibits exhausting remedies.
16. For my first incarceration, I sought a stay of enforcement of the Order both in the Court of Common Pleas (No. 2016-03340 Civil Term) and the Superior Court (appellate court - Case No. 2016-03340).
17. My basis for the stay was that I had no control over two, older teenaged children refusing to see their father, that the children want to regulate their access to their father, and that I cannot influence their decisions as to their schedules and activities.
18. I had a likelihood of success on the merits, there would be irreparable harm because the children were running away at night from their father, and ceasing litigation will bring the children closer to their father as an equitable result.
19. There were denials from both courts.
20. I am certain if I file again in both courts, I will be denied again.
21. I appealed from the Order, Case No. 2016-03340, to the Superior Court. The Superior Court cancelled oral argument upon my filing for a stay where I asserted I was being incarcerated. I sought reasonable accommodations while in prison for oral argument, and instead, the Superior Court cancelled oral argument.
22. The Superior Court denied the appeal. The court was not persuaded that a trial judge cannot be a psychologist determining parental alienation. The court was not persuaded that the children had no voice in the proceedings. The court was not persuaded by all the court's due process violations that sanitized the record, gave the opponent the

advantage, relieved opposing counsel from saying anything at trial, and ignored a plausible and likely reason for the children's refusal to see their father, seven years of family law litigation. This litigation stripped the children of both their parents, stripped them of child support essential for their development, and silenced them as to being able to petition for themselves which Pennsylvania law permits in their situation.

23. If I file an appeal for this current order, it will also be denied.
24. The state appellate court does not reverse contempt appeals and commitment appeals except in the most egregious situations which does not include my case.
25. I did not appeal to the Supreme Court of the Commonwealth of Pennsylvania.
26. I did not petition for a writ of certiorari to the U.S. Supreme Court.
27. I filed no other petitions as regards this incarceration except this *writ*.
28. At my hearing, my case was decided by the trial judge.

### GROUNDS FOR UNCONSTITUTIONAL INCARCERATION:

### GROUND 1 -- THE HEARING VIOLATED PROCEDURAL DUE PROCESS GUARANTEED BY THE FIFTH AND THE FOURTEENTH AMENDMENTS

The clause in the Fifth Amendment to the United States Constitution provides:

*No person shall ... be deprived of life, liberty, or property, without due process of law.*

The clause in Section One of the Fourteenth Amendment to the United States Constitution provides:

*...nor shall any State deprive any person of life, liberty, or property, without due process of law*

29. I received a horrifically deficient trial all of which is shown in trial transcripts.

### GENISIS OF THE ORDER

30. I did not get an unbiased tribunal both for the first incarceration and again for the current one. In both instances, the trial judge ran the proceeding personally, and my opponent's attorney sat at the counsel table saying and doing nothing. The judge

behaved as if he was my adversary violating his ethical requirements of integrity, impartiality and independence.

31. In January 2022, when this litigation started, I did not get a notice of the proposed action and the grounds asserted for it. The trial judge told me I was not entitled to find out from the court when my hearings were to take place. The trial judge said the court is not obligated to notify litigants of upcoming hearing dates. The grounds for the hearing involved contempt of a court order that had missing provisions and incomplete directions the judge told me I had to use "common sense" to interpret and implement.

32. The trial judge said Pennsylvania cannot possibly find enough quality judges to write court orders coherently, and that such orders would be a thousand pages long.

33. This meant, as the trial judges said on the records, that I had to use common sense to interpret the incomplete and incoherent order, and I had to take into account the "feelings" of my adversary in interpreting the order.

34. I observed that Pennsylvania orders are incomplete and incoherent. I also observed that the appellate court has "policies" it always implements, for example, that all orders of the trial court finding people in contempt must always be affirmed. It is this fluidity in the writing and the enforcement of orders that the trial judge in my case decided that any limitation as to sanctions contained in the order does not matter, and incarceration is always an available remedy that the appellate court will always affirm. Selectively perceiving my rights and remedies under an order violates my due process rights of which I now complain to this court.

35. With all this in mind, the essence of the dispute in the state court is whether two children undergoing their seventh year of custody litigation in the state court are being alienated by one parent or are being estranged by the other parent.

36. The state court is not able to make that determination because it is accustomed to deciding any outcome it wants with little interference from the appellate court.

37. In my case, the court assigned a guardian ad litem for the children not as their legal representative subject to rules of professional ethics, but rather as an agent of the state to determine the state's view of their best interests while openly ignoring the children's

privilege. On cross examination, this guardian said she had little to no psychological education, at least some but she could not recall.

38. The state court ordered the adversary to retain a master's level mental health professional to counsel the children. Then, the state court put that person on the witness stand to opine about how I refused to enter her office to participate in her counseling. To the state court, this was evidence of parental alienation because I refused to participate in counseling by that person.

39. After more than thirty counseling sessions where the counselor divulged the children's confidentiality, they refused to participate further.

40. Without the aid of an expert witness, the trial judge determined that I was alienating the children. The judge held an in chambers conference with the children who were not represented by counsel, and the judge challenged their opinions of their father and argued them down and trivialized their concerns.

41. I was unable to present a case for estrangement.

42. I was unable to obtain therapy for the children to reunify with their father.

43. The father continued to file contempt petitions that drove the children away from him, and I am prison again.

44. The state court does not consider my facts.

45. As for the Superior (appellate) court, in one instance, that court decided I was obstreperous and obdurate with no facts to support their assertion. I was neither obstreperous nor obdurate either at trial or on appeal at any time. I am not obstreperous or obdurate now.

46. On one occasion, the trial judge incarcerated me for five hours for refusing to answer one of her questions. The jailer kept me in handcuffs and denied me food, water and use of bathroom facilities.

47. I did not have an opportunity to present reasons why finding me in contempt should not be taken. When I spoke, the trial judge rolled her eyes, turned away from me, shook her head, made faces, and argued back that whatever I said was irrelevant. All my evidence was inadmissible while that of my adversary was all admissible though our evidence was

of the same type. The trial judge overruled my objections and proceeded to cross-examine me in the guise of a decision on an objection.

48. I did not have a right to present evidence, including the right to call witnesses. The trial judge rendered a psychological opinion devoid of any expert witness testimony. The trial judge played multiple roles: she was my adversary's attorney, she was the decider, and she was the expert witness. I could not present a counter witness for any of the trial judge's roles at any time.

49. During one hearing, the trial judge subpoenaed a witness *sua sponte*, and proceeded to elicit expert witness testimony from that witness qualifying her as an expert after that witness testified. The witness was actually a nurse, but the trial judge qualified her as a medical doctor.

50. I had no right to know opposing evidence. A report due days before trial did not appear until the day of trial, and the writer of that report was made unavailable for cross-examination.

51. I had no right to cross-examine adverse witnesses. The trial judge interrupted my questions, argued any adversary's case, and entered orders against non-parties with no jurisdiction over those parties. For example, the trial judge said, "You cannot talk about certain things," and "I'm ending testimony this afternoon (because I have something scheduled at 1:30pm)." The trial judge said, "You are limited to only five questions ... ."

52. The trial court's file contains all of the statements made by the trial judge as recorded either in trial transcripts or in the various oppositions I filed.

53. The decision was not based exclusively on the evidence presented. The trial judge played lie detector and expert witness. She opined on matters she had no training, education, and background in, and she found all my facts to be non-credible, and all the facts of my adversary to be credible.

54. I had no opportunity to be represented by counsel. I have no money and I subsist on public payments.

55. The trial judge did not require that a record of the evidence presented be made. She held at least one hearing with the court stenographer excused.

56. The trial judge prepared written findings of fact and reasons for its decision which a subsequent judge ignored completely. I was supposed to pay a fine of $20/day for non-compliance with the order, and instead find myself incarcerated and alone.
57. The subsequent judge advised the parties he was unprepared for the day's hearing and turned to my adversary's attorney for clues as to what happened before.
58. The subsequent trial judge decided to ignore the $20/day limitation as to sanction for non-compliance, and unilaterally decided to incarcerate me.

GROUND TWO -- THE HEARING WAS UNFAIRLY ETHNICALLY DISCRIMINATORY AS THE TRIAL JUDGE REQUIRED THE PARTIES TO SPEAK IN ENGLISH AND TO COMMUNICATE IN ENGLISH SO THAT THE TRIAL JUDGE COULD UNDERSTAND THE COMMUNICATIONS

59. One trial judge among the five on my case in Cumberland County commanded that I speak and write in English so he can understand me and my communications with my adversary.
60. I am a native Ukrainian, and English is my second language.
61. The trial judge denied me a translator so I could understand what the trial judge wanted of me.

GROUND THREE – VIOLATION OF MY RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT GUARANTEED BY THE EIGHTH AMENDMENT

*Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.*

62. I am unable to access the internet for legal research.
63. I am unable to type and print documents.
64. I am unable to see my family.
65. I am denied work release.
66. The underlying order limited a sanction for non-compliance of the court's order to $20/day, and not prison.

GROUND FOUR – VIOLATION OF MY CHILDREN'S RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT GUARANTEED BY THE EIGHTH AMENDMENT

7

67. The purge condition under the state's order of commitment provides that the children, must spend seven consecutive nights with their father in his home.
68. The children are not concentration camp inmates subject to being ordered by government.
69. The trial judge imposed the obligation upon the father to file an affidavit when the children have spent seven nights with him, but the trial judge did not impose this requirement upon the children to report to the court if they spent seven nights with their father.
70. The trial judge did not ask for the children's responses to such a purge condition.
71. The trial judge did not assign an attorney for the children to advocate for their interests.
72. The trial judge muzzled the children preventing any record of their position as to this purge condition.
73. The children are left to their devices by avoiding a father they do not want to see and a mother in prison for their desire not to see him.

**Therefore**, petitioner asks that this Court grant the following relief: Grant this Writ allowing me to appear before this court, grant me leave to assert my claims before this Court, grant me release from state incarceration, and command the state court to follow its order as to the $20/day fine for non-compliance with its order, along with other and further relief allowed by law.

I declare under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the care and control of the U.S. Post Office on May  , 2023.

_____
YELENA KOVALCHUK signed by her mother as petitioner is jailed with no access to documents and writing implements.

Copies Furnished:

Clerk, United States District Court

Middle District of Pennsylvania
P.O. Box 1148
Scranton, PA 18501-1148 **(original and two copies)** with payment of $5

Pennsylvania Office of Attorney General
Civil Law Division
Strawberry Square
Harrisburg, PA 17120 **one copy**
717-787-3391

Cumberland County Prison
1101 Claremont Road
Carlisle, PA 17015 **one copy**
Phone: : 717.245.8787
Fax: 717.240.6593
Administration 717.960.5528